USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/28/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN PERRY,

                        Plaintiff,

        -against-

CAPTAIN ROBERT SLENSBY,

                        Defendant.

No. 16-CV-08947 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Kevin Perry ("Plaintiff") filed this action against Captain Robert Slensby ("Defendant") under 42 U.S.C. § 1983 ("Section 1983" or "§ 1983"), alleging gender-based sexual harassment in violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiff claims that Defendant's alleged behavior over a period of about two years constituted sex-based workplace discrimination that resulted in a hostile work environment for Plaintiff. Defendant now moves to dismiss with prejudice Plaintiff's first amended complaint ("Amended Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons stated below, Defendant's motion is DENIED.

## BACKGROUND

In considering a Rule 12(b)(6) motion, a court is limited to the facts alleged in the complaint and is required to accept those facts as true. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). Accordingly, the following facts are taken from the Amended Complaint and are presumed to be true for purposes of this motion to dismiss.

In 2001, Plaintiff began working as a corrections officer for the County of Westchester. (Am. Compl. (ECF No. 17) ¶ 4.) At all times relevant to this matter, Defendant served as Plaintiff's

supervisor. (*Id.* ¶ 31.) In 2012, Plaintiff received a telephone call from Defendant, then a sergeant, while Plaintiff was at home recovering from knee surgery. (*Id.* ¶¶ 6–7.) Defendant made the call from the parties' workplace to conduct a work-related check. (*Id.* ¶¶ 5, 7.) Plaintiff did not answer the telephone because he was using the bathroom, and informed Defendant of this fact upon returning the call. (*Id.* ¶¶ 8–9.) Defendant responded, "Were you playing with your meat? Were you stroking your dick?" (*Id.* ¶ 10.) Plaintiff responded, "Excuse me?" and Defendant replied before hanging up, "I am just doing a home check, you are good." (*Id.* ¶ 11–12.) Plaintiff did not report this conversation because he viewed Defendant's comments as "just words." (*Id.* ¶ 13.)

On July 22, 2014, Plaintiff was in jail booking with Defendant, who had been promoted to captain since the 2012 telephone exchange, when Defendant placed his hands on Plaintiff's shoulders and began massaging him. (*Id.* ¶ 14.) As he did so, Defendant said, "If I was a female, I would fuck the shit out of you, and I would get a strap on and go for broke up your ass." (*Id.* ¶ 15.) Plaintiff pushed his chair back and looked in shock at Defendant and Defendant walked away. (*Id.* ¶¶ 16–17.) Plaintiff reports that he was "enraged" following this incident. (*Id.* ¶ 18.) During the following week, again in the jail booking area, Defendant placed his hand on Plaintiff, inquiring whether he was all right. (*Id.* ¶ 15.) Plaintiff told Defendant he was fine and directed Defendant not to touch him again. (*Id.* ¶ 20.) This incident apparently took place at some point during the night shift. (*Id.* ¶ 14.)

After the July 22, 2014 incident, Defendant called Plaintiff on his cell phone, inquiring when Plaintiff picked up, "You don't know my voice by now?" (*Id.* ¶ 21.) Plaintiff demurred and Defendant announced his identity, causing Plaintiff to disconnect the call. (*Id.* ¶ 22.) Defendant called back and Plaintiff did not answer. (*Id.* ¶ 23.)

When Plaintiff complained about the July 22, 2014 incident, Defendant denied making "blatantly sexually suggestive" comments to Plaintiff. (*Id.* ¶ 25.) Plaintiff continued to have ongoing contact with Defendant, who still served as one of his supervisors. (*Id.*)

Plaintiff was treated by "several" mental health professionals who determined that Plaintiff has "substantial anxiety related to the incident of July 22, 2014." (*Id.* ¶ 26.) One such professional concluded that Plaintiff suffered from "chronic and severe posttraumatic stress disorder and serious occupational impairment due to PTSD symptoms" relating to the episodes described above. (*Id.* ¶ 29.) Plaintiff has experienced substantial sleeplessness, emotional distress and anxiety and has been unable to go to work for long periods of time, with "consequent financial losses." (*Id.* ¶ 30.)

Plaintiff alleges that Defendant's behavior constituted sexual harassment on the basis of Plaintiff's gender, and that it resulted in the creation of a "sexually hostile work environment" for Plaintiff, in violation of the Fourteenth Amendment. Defendant moves to dismiss the Amended Complaint in its entirety.

## STANDARD OF REVIEW

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations." *Id.* at 679.

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

As a preliminary matter, Defendant asserts that the portion of Plaintiff's claim relating to Defendant's initial 2012 telephone call is time-barred and should not be considered by the Court. (Mem. Of Law In Supp. Of Mot. To Dismiss (ECF No. 19) ("Def.'s Mem.") 6.) Regardless of the Court's ruling on this issue, Defendant requests that the Court dismiss Plaintiff's Amended Complaint in its entirety because, even considering the 2012 incident, Defendant's alleged conduct does not amount to the creation of a hostile work environment in violation of Plaintiff's Fourteenth Amendment rights. Defendant avers that this conclusion is justified because (1) the conduct Plaintiff alleges was neither severe nor pervasive as a matter of law and (2) Plaintiff has failed to allege that he was sexually harassed on the basis of his gender. (Def.'s Mem. 5–9.) For the reasons discussed below, the Court agrees that the 2012 incident is time-barred but does not find dismissal appropriate as to the remaining elements of Plaintiff's claim at this stage. Furthermore, the Court does not find Defendant's argument that he is entitle to qualified immunity availing.

## A. Statute of Limitations

"The statute of limitations for actions under § 1983 is the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits." *Condit v. Bedford Cent. Sch. Dist.*, 2017 WL 4685546, at *7 (S.D.N.Y. Oct. 16, 2017) (internal quotation marks and citation omitted); *see also Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015); *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (*citing Owens v. Okure*, 488 U.S. 235, 249–50 (1989)). New York law provides for a three-year statute of limitations for personal injury claims. N.Y. C.P.L.R. § 214(5). Thus, the applicable statute of limitations for Section 1983 actions arising in New York requires claims to be brought within three years. *See, e.g., Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (applying three-year statute of limitations to state employee's Section 1983 claims alleging gender and race discrimination); *Plumey v. New York State*, 389 F. Supp. 2d 491, 496–97 (S.D.N.Y. 2005) (applying the same to state employee's Fourteenth Amendment equal protection claims alleging sex discrimination). Claims outside of that time frame are barred unless there is a basis under New York state law[1] to toll the statute of limitations. *See Plumey*, 389 F. Supp. 2d at 497.

Conversely, the accrual of claims brought under Section 1983 is a question of federal law. *See Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017). Generally, a claim will accrue once a plaintiff "knows or has reason to know of the injury which is the basis of his action." *Cornwell*, 23 F.3d at 703 (*citing Singleton v. New York*, 632 F.2d 185, 191 (2d Cir. 1980)). However, where a plaintiff has been subjected to a "continuous practice and policy of discrimination," "the commencement of the statute of limitations period may be delayed until the last discriminatory act

---

[1] "The state law where a federal court sits determines the tolling of the statute of limitations." *Plumey v. New York State*, 389 F. Supp. 2d 491, 497 (S.D.N.Y. 2005) (citing *Hardin v. Straub*, 490 U.S. 536 (1989)).

in furtherance" of such practice and policy. *Id.* (quotations and citations omitted). Although the continuing violation doctrine arises from claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.* ("Title VII"), it has been applied equally to Section 1983 claims within the Second Circuit. *See Plumey*, 389 F. Supp. 2d at 498; *Cornwell*, 23 F.3d at 704.

"In order to assert a continuing violation, a plaintiff must establish both (1) a policy or practice which caused the alleged discrimination, and (2) that the timely claim is continuous in time with the untimely claims." *Plumey*, 389 F. Supp. 2d at 498 (*citing Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Quinn*, 159 F.3d at 765 (internal quotation marks and citations omitted). The Second Circuit generally disfavors application of the continuing violation doctrine absent "compelling circumstances." *See Walzer v. Town of Orangetown*, 2015 WL 1539956, at *5 (S.D.N.Y. Apr. 7, 2015) (*citing Plumey*, 389 F. Supp. 2d at 498).

"Evidence that supports a hostile environment claim may also support the finding of a continuing violation." *Meckenberg v. New York City Off-Track Betting*, 42 F. Supp. 2d 359, 374 (S.D.N.Y. 1999); *see also, e.g., Cornwell*, 23 F.3d at 704; *Riedinger v. D'Amicantino*, 974 F. Supp. 322, 326 (S.D.N.Y. 1997). As the *Riedinger* court noted, "by its nature, a claim of 'hostile environment' discrimination turns on the existence of continuing violation."[2] *Riedinger*, 974 F. Supp. at 326. However, "[n]ot every sexual harassment claim will lend itself to a continuing violation theory, just as not every offensive incident will support a claim of harassment sufficient to alter the working conditions." *Fitzgerald v. Henderson*, 251 F.3d 345, 364 (2d Cir. 2001).

---

[2] This is true in instances where "pervasive" conduct produces a hostile environment, although it should be noted that isolated conduct can also give rise to a hostile work environment claim. *See* discussion *infra* Section B.

Plaintiff commenced the instant action on November 17, 2016. He has proffered no reason the statute of limitations should be tolled; indeed, he does not address Defendant's assertion that his 2012 claim is barred anywhere in his pleadings. Further, Plaintiff has not made allegations that would persuade us to apply the continuing violation exception here. The two instances of misconduct, over a period of four years, alleged in the Amended Complaint do not support an inference of a specific discriminatory policy or practice, nor are they sufficiently continuous to find a continuing violation. *See, e.g., Fitzgerald*, 251 F.3d at 364 (plaintiff's assertions of uninterrupted "escalating harassment every day" over a two and a half year period presented "an apt basis for application of the continuing violation theory"); *Quinn*, 159 F.3d at 766 (series of incidents separated by at least a year each "sufficiently isolated in time" from each other and from timely allegations to "break the asserted continuum of discrimination"); *Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir. 1998) (discrimination allegedly suffered before and after six year gap cannot be considered continuing violation); *Selan v. Kiley*, 969 F.2d 560, 566–67 (7th Cir. 1992) (two-year gap between discriminatory events "negates the contention that the acts were continuous or connected"). Accordingly, Plaintiff is barred from basing his Section 1983 claim on events that allegedly took place before November 17, 2013.

**B. Section 1983 Hostile Work Environment Claim**

Plaintiff presses his claim against Defendant under Section 1983, alleging a violation of his rights under the Fourteenth Amendment. To bring an action under Section 1983, a plaintiff must assert that the defendant (1) acted under "color of state law" to (2) deprive the plaintiff of a statutory or constitutional right. *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). "[S]tate employment is generally sufficient to render the defendant a state actor" who "acts under color of state law while acting in his official capacity or while exercising

his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 49–50 (1988). An individual defendant is liable under Section 1983 only if he or she was "personally involved" in the deprivation of plaintiff's rights. *Burhans v. Lopez*, 24 F. Supp. 3d 375, 381 (S.D.N.Y. 2014) (*citing Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Direct participation in the alleged constitutional violation suffices to demonstrate personal involvement. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (*quoting Colon*, 58 F.3d at 873).

The Fourteenth Amendment's Equal Protection Clause "protects ... employees from sex-based workplace discrimination, including hostile work environments and disparate treatment." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). Moreover, "[s]exual harassment that rises to the level of gender discrimination is actionable under § 1983 as violative of the Fourteenth Amendment right to equal protection." *Pedrosa v. City of New York*, 2014 WL 99997, at *5 (S.D.N.Y. Jan. 9, 2014) (*citing Annis*, 36 F.3d at 254); *see also Annis*, 36 F.3d at 254 ("[H]arassment that transcends coarse, hostile[,] and boorish behavior can rise to the level of a constitutional tort."). Sexual harassment claims generally fall under one of two theories. First, they may be premised on direct "quid pro quo" discrimination, in which an employer "alters an employee's job conditions or withholds an economic benefit because the employee refuses to submit to sexual demands." *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 577 (2d Cir. 1989) (internal alterations and quotation marks omitted). Second, a claim may be based on the allegation of a hostile work environment, in which the gender-based harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (*citing Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Plaintiff's assertions implicate the latter theory.

Section 1983 sexual harassment claims based on a hostile work environment theory are governed by traditional Title VII "hostile environment" jurisprudence. *Hayut v. State Univ. of New York*, 352 F.3d 733, 744 (2d Cir. 2003); *see also Annis*, 136 F.3d at 245; *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996). Accordingly, "[c]ases interpreting hostile work environment claims under [either § 1983 or Title VII] are generally cited interchangeably." *Lamarr-Arruz v. CVS Pharmacy, Inc.*, 271 F. Supp. 3d 646 n.6 (S.D.N.Y. 2017). The Court cites cases brought under either statute in its discussion of the elements of a hostile work environment claim herein.

In this matter, there is no dispute that Defendant was acting under color of state law in his capacity as a state employee at the Westchester County Department of Correction, and that Defendant was personally involved in the alleged harassment. However, Defendant argues that his alleged conduct does not amount to a constitutional violation because (i) it was not sufficiently severe or pervasive and (ii) it was not motivated by Plaintiff's sex. The Court will address each of these arguments in turn.

i.      Severe or Pervasive Conduct

In evaluating a hostile work environment-based claim, courts must look at the totality of the circumstances to determine whether an environment is "hostile" or "abusive" and should include in their considerations the following nonexclusive list of factors: "[(1)] the frequency of the discriminatory conduct; [(2)] its severity; [(3)] whether it is physically threatening or humiliating, or a mere offensive utterance; and [(4)] whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also Dawson v. Cty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004). "While each of these elements is relevant to the inquiry, no single factor is required." *Dawson*, 373 F.3d at 272 (internal quotation marks omitted) (*citing Harris*, 510 U.S. at 23). Although, in general, the incidents alleged to make

out a hostile work environment claim "must be more than episodic" and "must be sufficiently continuous and concerted in order to be deemed pervasive," *Carrero*, 890 F.2d at 577, a single, isolated incident can suffice to establish a hostile work environment claim provided that it is "extraordinarily severe," *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013). *See, e.g., Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) ("[A] single act can create a hostile work environment if it in fact work[s] a transformation of the plaintiff's workplace." (internal quotation marks omitted)). Importantly, "a plaintiff need not show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Pucino v. Verizon Communications, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010) (emphases in original).

The plaintiff is required to establish both that the defendant's conduct was objectively hostile or abusive to a reasonable person and that the plaintiff subjectively perceived the environment to be abusive. *See Harris*, 510 U.S. at 21; *see also Desardouin*, 708 F.3d at 105. The Supreme Court has observed that the objective component is "crucial" to ensuring that courts and juries "do not mistake ordinary socializing in the workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory 'conditions of employment.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998); *see also Redd v. New York Div. of Parole*, 678 F.3d 166, 176 (2d. Cir. 2012) ("Title VII does not set forth a general civility code for the American workplace." (internal quotations and citations omitted)). The objective severity or pervasiveness of harassment "should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 81. This inquiry requires "careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Id.*

The Second Circuit has observed that in cases involving hostile work environment claims, the "line between complaints that are easily susceptible to dismissal as a matter of law and those that are not is indistinct." *Redd*, 678 F.3d at 177. "On one side lie [complaints of] sexual assaults; [other] physical contact[, whether amorous or hostile, for which there is no consent express or implied]; uninvited sexual solicitations; intimidating words or acts; [and] obscene language or gestures .... On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers." *Id.* (alteration in original) (citing *Gallagher v. Delaney*, 139 F.3d 338, 347 (2d Cir. 1998). Moreover, "on either side of the line there are, depending on the circumstances, gradations of abusiveness." *Redd*, 678 F.3d at 177.

Noting this ambiguity, the Second Circuit has instructed that "the question of whether a work environment is *sufficiently* hostile to violate Title VII is one of fact" and "[t]he interpretation of ambiguous conduct is an issue for the jury." *Id.* at 178 (internal quotations and citations omitted). In the context of a motion to dismiss, courts should take care not to set the bar too high. *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotations and citations omitted). "Ultimately, to avoid dismissal under [Fed. R. Civ. P.] 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Id.*

Here, Plaintiff reports that on one occasion during their night shift Defendant said to Plaintiff, "If I was a female, I would fuck the shit out of you, and I would get a strap on and go for broke up your ass." Defendant made this statement while giving Plaintiff an unsolicited shoulder massage in the jail booking area. Plaintiff makes no other allegations of harassment; the conduct Plaintiff alleges occurred following the booking room incident cannot reasonably be said to

constitute or contribute to harassment, even in light of Defendant's preceding behavior. First, Plaintiff claims that Defendant placed a hand on Plaintiff in the booking area where the initial incident occurred and asked if Plaintiff was "all right." (Am. Compl. ¶ 19.) Plaintiff does not assert that Defendant placed his hand on Plaintiff's intimate body part or touched him in a threatening or sexual manner, nor does he otherwise suggest that Defendant's conduct in this instance was anything other than a friendly exchange between colleagues. Plaintiff avers that he told Defendant not to touch him again, and makes no allegation that Defendant ignored that request. (*Id.* ¶ 20.) Second, Plaintiff claims that Defendant called him twice on his cell phone following this exchange and said in the first instance, "You don't know my voice by now?" (*Id.* ¶ 21.) Plaintiff and Defendant had at that point been working together for a number of years. When Defendant announced himself, Plaintiff hung up the phone and Defendant called back one time. (*Id.* ¶¶ 22–23.) It is difficult to see how either of these incidents amount to harassing behavior. While touching and repeated phone calls following an aggressive expression of sexual interest could certainly contribute to a hostile work environment under other circumstances, here Plaintiff's allegations seem innocuous and far more akin to the benign and familiar behavior of a colleague. Even though Plaintiff's reactions indicate that he viewed these incidents as abusive, the Court cannot find it reasonable to view them as objectively so.

However, the initial booking room incident involving Defendant's unsolicited massage and sexually explicit statement is more problematic. Although the *Harris* factor of "frequency of the discriminatory conduct" indisputably cuts in favor of Defendant, Plaintiff need only show that Defendant's conduct was severe *or* pervasive, not both. *See Pucino*, 618 F.3d at 119. There can be no serious dispute in this case that Plaintiff perceived this encounter as subjectively abusive. Plaintiff reports that he had "substantial anxiety" related to the incident and suffered from "chronic

12

and sever posttraumatic stress disorder" as a consequence. (Am. Compl. ¶¶ 26, 29). Whether Plaintiff's allegations could be characterized objectively as sufficiently severe is a closer and more difficult question.

Defendant asserts that "[t]ypical examples" of single incidents that suffice to establish a hostile work environment claim are "rape ... or sexual assault," (Def.'s Mem. 5), and argues that the conduct alleged in this case does not rise to that level. It is true and well-settled that a single physical act such as an assault can create a hostile work environment. *See, e.g., Turnbull v. Topeka State Hospital*, 255 F.3d 1238, 1243 (10th Cir. 2001) (sexual assault could be sufficiently severe without more to create a hostile work environment); *Smith v. Sheahan*, 189 F.3d 529, 534 (7th Cir. 1999) ("'extremely serious' acts of harassment" like physical assault may be severe and need not also be pervasive); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995) ("[E]ven a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment."); *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012) (single occasion where harasser grabbed and squeezed plaintiff's breast was enough to defeat motion to dismiss). However, as several courts have recognized, "a single *verbal* (or visual) incident can likewise be sufficiently severe to justify a finding of a hostile work environment." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 580 (D.C. Cir. 2013) (emphasis in original) (finding that being called the n-word by a supervisor suffices by itself to establish a racially hostile work environment); *see also, e.g., Reedy v. Quebecor Printing Eagle, Inc.*, 333 F.3d 906, 909 (8th Cir. 2003) (racially hostile graffiti that amounted to death threat qualifies as "severe"); *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (a reasonable juror could find that co-worker's public tirade, including charges that plaintiff had gained her position by performing fellatio, was humiliating and resulted in an intolerable alteration of plaintiff's working

conditions); *Richardson v. N.Y. State Dept. of Correctional Service*, 180 F.3d 426, 437 (2d Cir. 1999) (case involving the use of several racial epithets and insults where court recognized that "even a single episode of harassment, if severe enough, can establish a hostile work environment"); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 593–94 (S.D.N.Y. 2011) (finding that a single incident where a defendant allegedly simulated oral sex with co-defendant in front of plaintiff could be found sufficiently severe enough to create a hostile work environment in light of co-defendant's other harassing behavior, and could reasonably result in liability for that defendant).

Unfortunately, decisions as to whether harassment suffices to alter the conditions of the work environment often lack a clear standard easily applied to other cases. "Applicable local case law illustrates the inconsistency of treatment received by similar motions to dismiss." *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 258 (S.D.N.Y. 2014). For example, Defendant cites *Prince v. Cablevision Sys. Corp.*, an unpublished opinion in which the court granted a motion to dismiss a hostile work environment claim based on allegations that a senior employee outside of the workplace made sexual advances toward the plaintiff, solicited her for sex, and tried to kiss her and put his tongue down her throat, as supporting dismissal in this case. 2005 WL 1060373, at *7–10 (S.D.N.Y. May 6, 2005). However, under a very similar set of facts in *Pryor v. Jaffe & Asher, LLP*, the court arrived at the opposite conclusion. *See* 992 F. Supp. 2d at 259. In that case, the harasser and plaintiff were at a bar when the harasser grabbed plaintiff and attempted to kiss her neck, and pulled her back when she pulled away and succeeded in kissing her neck. *Id.* at 255 (also alleging that the harasser stroked plaintiff's hand earlier in the episode). Moreover, as previously discussed, the Second Circuit and other courts have held that even solitary incidents of verbal or visual harassment may qualify as sufficiently severe to create a hostile work environment,

even though some such incidents arguably fall short of the shocking behavior in *Prince*. *See* discussion *infra* Section B, i.

Ultimately, these decisions "reveal how difficult it is for courts to perform the extraordinarily sensitive and comprehensive analysis necessary to assess a total set of workplace circumstances and determine whether a particular set of words and actions were enough to make that workplace a different, less tolerable environment for the victimized party." *Pryor*, 992 F. Supp. 2d at 259. Mindful of the Second Circuit's caution to courts not to set the bar too high in performing this analysis, the Court in this case cannot say as a matter of law that Defendant's behavior is "without question insufficiently severe to state a claim for hostile work environment." *Id.* at 259; *see Tepperwien v. Entergy Nuclear Operations, Inc.*, 606 F. Supp. 2d 427, 440–41 (S.D.N.Y. 2009), *aff'd in part*, 663 F.3d 556 (2d Cir. 2011) (noting that "[a] statement can carry different meanings and connotations depending on how it was said" and that "[a]n otherwise innocent physical touch can, in certain contexts, be a sexually threatening touch").

Defendant's words were sexually explicit and aggressive, and coupled with his unwanted touching of Plaintiff's body in an intimate manner could be construed as physically threatening. *See Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296, 308 (S.D.N.Y. 2016) (finding plaintiff's allegations that defendant routinely rubbed her shoulders and touched her face plausibly alleged a pattern wherein defendant asserted physical power over plaintiff without her consent). This is significant because "[t]he presence of any conduct that is "physically threatening or humiliating" may be especially important in determining whether a work environment is objectively hostile." *Id.* at 307 (quoting *Redd*, 678 F.3d at 175); *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010) (noting that "even if overtly gender-based discriminatory conduct is merely episodic and not itself severe, the addition of physically threatening ... behavior

may cause offensive or boorish conduct to cross the line into actionable sexual harassment (alteration in original) (internal quotations and citation omitted)).

In addition, Plaintiff had to have ongoing contact with Defendant following this incident because Defendant continued to serve as one of Plaintiff's supervisors. Furthermore, when Plaintiff complained of Defendant's conduct,[3] Defendant denied making any sexually suggestive comments to Plaintiff. "Corrections officers ... work in an environment that can pose physical dangers and requires trust and confidence among co-workers." *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002). If Plaintiff were to produce adequate evidence in support of his claims, a reasonable person could find that Defendant's refusal to corroborate Plaintiff's account caused Plaintiff's reputation among his colleagues to suffer and had a detrimental effect on Plaintiff's conditions of employment.

Finally, Plaintiff reports that Defendant's conduct did interfere with his work performance. As a consequence of the booking room incident, Plaintiff has "experienced substantial sleeplessness, emotional distress and anxiety and has been unable to attend to his workplace for long periods of time with consequent financial losses." (Am. Compl. ¶ 30.) Allegedly, he has had to treat with "several mental health professionals, each of whom determined that [P]laintiff has substantial anxiety" related to the booking room episode. (Am. Compl. ¶ 26.)

"The fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases." *Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997). It is clear that Defendant's alleged behavior is not "the most egregious." *See, e.g.*, *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001) (where single incident of rape was found sufficient to state a hostile work

---

[3] Presumably, Plaintiff made this complaint to the appropriate authorities within the workplace, although Plaintiff does not specify to whom he complained. (Am. Compl. ¶ 25.)

environment claim). At the same time, it rises above the level of "ordinary socializing in the workplace—such as male-on-male horseplay or intersexual flirtation." *Oncale*, 523 U.S. at 81. Because Defendant's conduct could plausibly be found to constitute something well beyond the "occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers," *Redd*, 678 F.3d at 177, and rising to the level of an abusive working environment, Plaintiff's claim survives dismissal.

      ii.    Harassment Based on Sex

The Second Circuit has explained that, apart from showing that the defendant's conduct was sufficient to render the work environment hostile to the plaintiff, "[a] plaintiff pursuing a sex-based hostile work environment claim 'must always prove that the conduct at issue was not merely tinged with offensive connotations, but actually constituted discrimination because of sex.'" *Raniola v. Bratton*, 243 F.3d 610, 621 (2d Cir. 2001) (*quoting Oncale*, 523 U.S. at 80–81). This is true regardless of the sex of the plaintiff and the defendant. *See Oncale*, 523 U.S. at 79–80 (expressly noting that sexual harassment claims "because of" sex are not barred "merely because the plaintiff and the defendant ... are of the same sex."). Accordingly, a male plaintiff alleging sexual harassment based on a hostile work environment must show that he was harassed because he was male in order to prevail on his claim. "The critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* at 80 (*quoting Harris*, 510 U.S. at 25 (GINSBURG, J., concurring)).

The Supreme Court has indicated in *Oncale v. Sundowner Offshore Servs., Inc.* that a plaintiff bringing a same-sex sexual harassment claim can show discrimination "because of" sex using one of three recognized but nonexclusive evidentiary routes. First, where the challenged conduct involves explicit or implicit proposals of sexual activity, if the plaintiff produces credible

evidence that the harasser is homosexual then it may be inferred that the proposals were motivated by sexual desire and thus constitute harassment based on sex. *Oncale*, 523 U.S. at 80. Second, a plaintiff can show harassment based on sex if a harasser's conduct was "motivated by general hostility to the presence" of members of the same sex in the workplace. *Id.* Finally, a plaintiff may offer "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id.* at 80−81.

The only theory of motivation relevant to the allegations Plaintiff makes is the first. Although *Oncale* refers to "credible evidence" of the harasser's homosexuality as the first means by which a same-sex sexual harassment plaintiff may prove harassment based on sex, a number of courts have held explicitly or implicitly that a plaintiff may make the requisite showing by offering evidence that the harasser was "sexually interested" in the plaintiff. *See e.g., Dick v. Phone Directories Co.*, 397 F.3d 1256, 1265 (10th Cir. 2005) (emphasizing that "*Oncale*'s first evidentiary route turns on whether the harasser acted out of sexual desire" and does not require the plaintiff to produce evidence that harasser was homosexual to make his or her case); *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 264 (3d Cir. 2001) (requiring evidence that the harasser sexually desires the victim); *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009–10 (7th Cir. 1999) (after noting that Court viewed *Oncale* examples as instructive rather than exhaustive, holding that evidence of sexual desire for plaintiff was sufficient even though incidents did not necessarily prove homosexuality); *Lewis v. Baltimore City Bd. of Sch. Commissioners*, 187 F. Supp. 3d 588, 595 (D. Md. 2016) ("[S]everal courts have held that a plaintiff may prove harassment was based on sex by offering evidence that the harasser was sexually interested in the plaintiff."); *U.S. E.E.O.C. v. Belle Glade Chevrolet-Cadillac-Buick-Pontiac-Oldsmobile, Inc.*, 2008 WL 62159, at *3 (S.D. Fla. Jan. 3, 2008) (holding that because "reasonable juror could

conclude" that harasser "was motivated by sexual desire," plaintiff presented sufficient evidence that discrimination was because of his sex); *see also Tepperwien v. Entergy Nuclear Operations, Inc.*, 606 F. Supp. 2d 427, 440–41 (S.D.N.Y. 2009), *aff'd in part*, 663 F.3d 556 (2d Cir. 2011) (conflating "credible evidence" of homosexuality with credible evidence sufficient to show that harasser acted out of sexual desire in harassing plaintiff, where plaintiff had testified that he did not believe harasser was homosexual).

Although the Second Circuit has not ruled on this issue, the Court finds this reading of the first *Oncale* evidentiary route persuasive. *Oncale* observes that implicit or explicit proposals of sexual activity could be found to be motivated by sexual desire, even when such conduct occurs between members of the same sex, at least when the harasser is homosexual. *Oncale*, 523 U.S. at 80. However, while the fact that the harasser identifies as homosexual is one way to indicate that the conduct was motivated by sexual desire, sexual desire may also be shown by other factors such as the nature and content of the conduct itself. Moreover, as the Tenth Circuit has noted, "aside from testimonial evidence or the fact of the harassing conduct ... it would often be extremely difficult to obtain evidence tending to show a person's sexual orientation." *Dick*, 397 F.3d at 1265. The key issue remains whether the harasser subjected members of one sex to implicit or explicit propositions that members of the opposite sex were not exposed to. *See Oncale*, 523 U.S. at 80; *see also Shepherd*, 168 F.3d at 1009 ("So long as the plaintiff demonstrates in some manner that he would not have been treated in the same way had he been a woman, he has proven sex discrimination.").

In considering this issue, a harasser's actions must continue to be evaluated with "an appropriate sensitivity to social context." *Oncale*, 523 U.S. at 82. While explicitly sexual comments or behavior are often suggestive of sexual desire, the inference is not inevitable. As the

Seventh Circuit has noted, for example, "it is not at all unusual in some settings for people to taunt one another using profanity which, although facially sexual, has little or nothing to do with the gender of the individuals trading insults." *Shepherd*, 168 F.3d at 1010. Conversely, "when the context of the harassment leaves room for the inference that the sexual overlay was not incidental—that the harasser was genuinely soliciting sex from the plaintiff or was otherwise directing harassment at the plaintiff because of the plaintiff's sex—then the task of deciding whether the harassment amounts to sex discrimination will fall to the finder of fact." *Id.* at 1011; *see also, e.g., Tepperwien*, 606 F. Supp. 2d at 441 (noting that "the line between teasing or hazing and sexual harassment is not always simple to discern" and that it is not the Court's place "to supplant the factfinder's role and make such determinations").

In this case, the question is whether Plaintiff has made allegations that, if believed, tend to show that was harassed "because he was male." The Court finds that Plaintiff has met this burden. During the July 22, 2014 incident in jail booking, Defendant expressed sexual interest in Plaintiff in explicit and detailed terms that a reasonable person could find go beyond the casual obscenity that might be expected between male co-workers, and that suggest Defendant's conduct towards Plaintiff was motivated by sexual desire. The allegation that Defendant's words were accompanied by an unsolicited shoulder massage may be viewed as reinforcing that suggestion. Since Plaintiff's allegations, if true, could plausibly be interpreted as showing sexual interest on the part of Defendant, the Court cannot find as a matter of law that no reasonable person could conclude Defendant's conduct was not "because of" Plaintiff's sex.

## C. Qualified Immunity

Defendant claims, without further explanation, that "because Defendant did not violate Plaintiff's constitutional rights, he is entitled to qualified immunity." (Def.'s Mem. 6.) The Court does not find this argument persuasive.

In Section 1983 cases, "[p]ublic officials sued in their individual capacity are entitled to qualified immunity from suit unless '[t]he contours of the [constitutional] right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' *Back*, 365 F.3d at 129 (*citing Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus, "even assuming a state official violates a plaintiff's constitutional rights, the official is protected nonetheless if he objectively and reasonably believed that he was acting lawfully." *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004). However, the Supreme Court, recognizing the importance of balancing the interests of notice with those of recovery, has declined to say that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Thus, in assessing a qualified immunity claim, courts in the Second Circuit must consider:

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Back*, 365 F.3d at 129–30 (citation omitted).

In this case, Defendant is not entitled to qualified immunity. An employee's right to be free from sexual harassment in the workplace is well-settled, and has been for some time. *See*

*Carrero*, 890 F.2d 569 (recognizing claim for hostile environment sexual harassment under the Equal Protection Clause); *see also Back*, 365 F.3d at 130; *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996); *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993). Moreover, it was clear at the time of the allegations that unwanted physical contact and implicit or explicit sexual propositions could constitute a violation of that right, and that even a single gross incident of harassment could create a hostile work environment. *See Fitzgerald*, 251 F.3d at 350, 365–66; *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225–27 (2d Cir. 2004). A reasonable supervisor in Defendant's position would not have thought he was permitted to make the sexually-charged comments and advance alleged to an employee in the workplace. Accordingly, Defendant is not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss. The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 18. Defendant is directed to file an answer to the Amended Complaint within 21 days of this Opinion and Order, by March 21, 2018. The parties are directed to appear for conference on March 27, 2018 at 12:00PM. The parties are requested to complete the attached case management plan and submit a copy to chambers in advance of the conference on March 27, 2018.

Dated:    February 28, 2018                  SO ORDERED:
           White Plains, New York

                                              NELSON S. ROMÁN
                                       United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. Jan. 2012

-------------------------------------------------------------x

                                    Plaintiff(s),

     - against -

                                      Defendant(s).

**CIVIL CASE DISCOVERY PLAN
AND SCHEDULING ORDER**

_____ CV _____ (NSR)

-------------------------------------------------------------x

        This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.    All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.    This case [is] [is not] to be tried to a jury.

3.    Joinder of additional parties must be accomplished by _____.

4.    Amended pleadings may be filed until _____.

5.    Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.    First request for production of documents, if any, shall be served no later than

      _____.

7.    Non-expert depositions shall be completed by _____.

      a.    Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

      b.    Depositions shall proceed concurrently.

      c.    Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.    Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.   Requests to Admit, if any, shall be served no later than _____.

10.  Expert reports shall be served no later than _____.

11.  Rebuttal expert reports shall be served no later than _____.

12.  Expert depositions shall be completed by _____.

13.  Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.  **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.  Any motions shall be filed in accordance with the Court's Individual Practices.

16.  This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.  The Magistrate Judge assigned to this case is the Hon. _____.

18.  If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.  The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated: White Plains, New York
    _____

                                        _____
                                        Nelson S. Román, U.S. District Judge